

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/21/2018

| | | |
|---|---|---|
| IN RE: | § | |
| MICHAEL STANDLEY; aka STANDLEY | § | CASE NO: 14-36711 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

## MEMORANDUM OPINION

Ocwen Loan Servicing, Inc. filed a late proof of claim and notice of mortgage payment change arising from Michael Standley's home mortgage. (ECF No. 84 at 1). Standley objected to Ocwen's claim because Ocwen's filing occurred after the bar date had passed. (ECF No. 49 at 2). Although the parties settled the underlying dispute, Ocwen objected to the amount of attorney's fees Standley sought to recover. (ECF No. 50 at 1). The Court raised the issue of whether attorney's fees may be awarded under the Supreme Court's decision in *Baker Botts, LP v. Asarco*.

Standley's motion for attorney's fees is granted in part and denied in part.

### Background

Michael Standley filed his chapter 13 bankruptcy petition on December 2, 2014. (ECF No. 1). In his bankruptcy schedules, Standley claimed his home, located at 23119 Enchanted Cactus Drive in Katy, Texas, as his exempt homestead. (ECF No. 12 at 7). Standley owed Ocwen $152,443.00 on his mortgage along with an arrearage of $26,250.00. (ECF No. 12 at 9).

Standley's proposed chapter 13 plan sought to pay his mortgage at a fixed amount of $1,732.00 per month over sixty months and the arrearage with payments of $359.81 per month over five months, increasing to $500.01 per month for the remainder of the plan. (ECF No. 13 at 2–3). The Court confirmed Standley's chapter 13 plan on February 13, 2015. (ECF No. 30).

On April 7, 2016, Ocwen filed a notice of mortgage payment change advising Standley that it was increasing his monthly payment by $405.56 to account for an increased arrearage of $32,513.03. (ECF No. 35 at 1; ECF No. 49 at 2). Standley objected to Ocwen's new claim on the grounds the increase is prohibited by the claims bar date, which passed after April 16, 2015, and is limited to the amounts allowed in Standley's confirmed plan. (ECF No. 49 at 2–3).

The parties eventually settled and agreed to an appropriate amount owed for Ocwen's proof of claim. (February 5, 2018 Hearing at 9:01 A.M.). However, Ocwen's liability for Standley's attorney's fees remained in dispute. The Court held a hearing on February 5, 2017, during which it raised the issue of whether an attorney may claim attorney's fees for defending fees in a bankruptcy case. (February 5, 2018 Hearing at 9:19 A.M.). The Court took the matter under advisement on February 20, 2018.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## Analysis

Standley's Counsel seeks to shift the cost of his attorney's fees to Ocwen rather than his client. (ECF No. 84). Counsel claims this fee shifting is appropriate because he did not engage in fee defense litigation and because Ocwen improperly protracted litigation between the parties. (ECF No. 84 at 2–3). Counsel also suggests that awarding attorney's fees is sound policy because, absent the risk of paying fees, creditors will be emboldened to litigate fee amounts to the detriment of debtors' counsel. (ECF No. 84 at 4).

The Bankruptcy Code allows for "reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy." 11 U.S.C. §

330(a)(4)(B). In *Baker Botts, LLP v. ASARCO, LLC*, the Supreme Court examined whether fee shifting was authorized under § 330(a)(1)(A). 135 S.Ct. 2158, 2164 (2015). Within that case, a dispute arose between a debtor and a law firm regarding attorney's fees that ultimately led the bankruptcy court to award the law firm $5,000,000.00 "for time spent litigating in defense of their fee applications." *Id*. at 2163.

The Supreme Court began its analysis with the underlying principle of the American Rule as its frame of reference. *Id.* at 2164. The American Rule requires that each party pay its own attorney's fees unless a statute provides "specific and explicit provisions for the allowance of attorney's fees." *Id.* at 2164 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975)). However, the language of § 330(a)(1)(A), authorizing "reasonable compensation for actual, necessary services rendered" contained no such explicit authorization for fee shifting. *Id.* at 2165. The Court ultimately held that the words "*services rendered*" in § 330(a)(1)(A) required a connection to the client's benefit and are distinguished from fee application litigation where benefits inure to attorneys rather than clients. *See id*.

Additionally, the lack of statutory authorization for fee shifting under § 330(a)(1)(A) is clear when contrasted against other parts of the Bankruptcy Code, such as 11 U.S.C. § 110(i)(1)(C), that expressly authorize fee shifting. *ASARCO*, 135 S.Ct. at 2166. Under § 110(i)(1)(C), if a "bankruptcy preparer . . . commits any act that the court finds to be fraudulent, unfair, or deceptive . . . the court shall order the [preparer] to pay to the debtor reasonable attorney's fees and costs." Section 330(a)(1)(A) lacks the specific authorization found in § 110(i)(1)(C). *Id*. The Supreme Court held that "if Congress wished to shift the burdens of fee-defense litigation under § 330(a)(1) in a similar manner, it easily could have done so." *Id*.

In support of his attorney's fees, Standley's Counsel attached a five-page exhibit itemizing each charge incurred while opposing Ocwen's increased claim, totaling $5,290.25 in expenses. (ECF No. 74-1). The descriptions of each charge establish that the work performed satisfied the requirement of § 330(a)(1)(A) that the attorney render "actual, necessary services." The services Counsel provided—such as reviewing the proof of claim, attending hearings, and negotiating the settlement with Ocwen—resulted in a tangible benefit to Standley since Ocwen agreed to reduce its claim to the amount in Standley's confirmed plan. (ECF Nos. 74-1; 84 at 2).

As Standley's Counsel suggests, these legal services satisfy one requirement of § 330(a)(1)(A) and distinguish this case from *ASARCO*. By opposing Ocwen's revised claim, Counsel provided a direct benefit to Standley and the bankruptcy estate and did not engage in any fee defense litigation. *See ASARCO,* 135 S.Ct. at 2166.

However, Counsel also billed for other activities which fall squarely within the reasoning outlined in *ASARCO*. In his exhibit, Counsel describes time spent discussing attorney's fees with Ocwen's counsel as well time spent to "approve . . . fees." (Exhibit B at 6). These fail to meet the standard in *ASARCO* that compensation is for services an attorney renders to a client. *Id*. at 2165. Rather, in order to receive fees, the work performed "necessarily implies loyal and disinterested service in the interest of a client." *Id*. (internal quotations omitted). Counsel fails to describe how defense of his fees is in Standley's interest nor does he point to any statutory authority that explicitly authorizes payment of such fees. (*See generally* ECF No. 84). Under *ASARCO*, absent explicit statutory authorization, the American Rule controls payment of attorney's fees. *Id*. at 2164. Thus, Counsel may not recover that portion of his recovery sought for defense of fees.

Counsel argues that without the deterrent effect of including fees for fee defense, creditors' counsel will unfairly utilize fee litigation to tactically to drive up costs at the expense of debtors' counsel.  (ECF No. 84 at 4).  *ASARCO* addressed an identical policy argument claiming that the multiple competing interests involved in bankruptcy litigation may be "particularly costly because multiple parties in interest may object to fee applications."  135 S.Ct. at 2168.  The Supreme Court found this argument unconvincing in comparison with the plain text of § 330(a)(1)(A).  *Id*. at 2164

Regardless of the potential policy ramifications Counsel predicts, the fact remains that no statutory mandate specifically authorizes shifting fees for fee defense to Ocwen.  As discussed in *ASARCO*, without "specific and explicit provisions for the allowance of attorney's fees," the American Rule controls.  *Id*.

Counsel submitted invoices in his Exhibit B, detailing billing information for the services provided while representing Standley in this matter.  Several of the line items billed between December 13, 2017 and January 10, 2018 reflect time spent defending attorney's fees.  Although these time periods contain some permissible work such as "communications with attorney for Ocwen regarding objection to claim," they also reflect time billed for "objection to mortgage payment change attorney's fees."  (Exhibit B at page 6).  Counsel has not adequately delineated time spent in service of his client from those spent defending his fees.  The amounts are not large enough to justify recreation of the invoices.  Accordingly, the Court adopts the most conservative estimate and denies any billing entry that contains time Counsel spent defending fees.  In total, Counsel's fees are reduced by $244.50.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **March 20, 2018.**

                                            Marvin Isgur
                            UNITED STATES BANKRUPTCY JUDGE